Tuhin Ganguly, Esq. (CA Bar No. 261484)
gangulyt@pepperlaw.com
Goutam Patnaik, Esq. (*pro hac vice*)
patnaikg@pepperlaw.com
Ryan H. Ellis, Esq. (*pro hac vice*)
ellisr@pepperlaw.com
David Shaw (*pro hac vice*)
shawd@pepperlaw.com
**PEPPER HAMILTON LLP**
2000 K Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-220-1247
Fax: 202-220-1465

Gregory S. Bishop (CA Bar No. 184680)
bishopg@pepperlaw.com
**PEPPER HAMILTON LLP**
333 Twin Dolphin Avenue, Suite 400
Redwood City, CA 94065-1434
Telephone: 650-802-3600
Fax: 650-802-3650

Suparna Datta (*pro hac vice*)
dattas@pepperlaw.com
Brittanee L. Friedman (*pro hac vice*)
friedmbr@pepperlaw.com
**PEPPER HAMILTON LLP**
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
Telephone: 617-204-5100
Fax: 617-204-5150

Russell Hayman (CA Bar No. 110643)
rhayman@mwe.com
Jon Dean (CA Bar No. 184972)
jdean@mwe.com
Tala Toufanian Jayadevan (CA Bar No. 288121)
tjayadevan@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3218
Telephone: 310-277-4110
Fax: 310-277-4730

Amol A Parikh (*pro hac vice*)
ampraikh@mwe.com
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606
Telephone: 312-984-6577
Fax: 312-984-7700

Attorneys for Defendant and Counterclaimant,
Polycom, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| DIRECTPACKET RESEARCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> POLYCOM, INC., <br><br> Defendant. | Civil Action No. 19-CV-03918-LHK <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL DIRECTPACKET TO COMPLY WITH PATENT RULE 3-1 AND/OR TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS** <br><br> DATE: April 23, 2020 <br> TIME: 1:30 p.m. <br> DEPT.: Courtroom 8, 4th Floor <br> JUDGE: The Honorable Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 23, 2020 at 1:30 p.m., or as soon as the matter may be heard in the Courtroom of the Hon. Lucy H. Koh, in the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, California, 95113, Defendant and Counterclaimant Polycom, Inc. ("Polycom") will, and hereby does, move to Compel Plaintiff directPacket Research Inc. ("directPacket") to Comply with Patent Rule 3-1 and/or Strike Plaintiff's Infringement Contentions.

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the pleadings in this action, the accompanying Declarations of Gregory S. Bishop and exhibits thereto, and such other matters and argument as the Court may consider at the time of the hearing hereof.

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

  A. Protocols, Tables and Repositories (RPAD and VBP Products) .................. 1

  B. "Converting" and "Translating" Steps (RMX Products) .............................. 2

  C. Doctrine of Equivalents ................................................................................ 3

II. BACKGROUND AND PROCEDURAL HISTORY ..................................................... 3

III. LEGAL STANDARD ..................................................................................................... 5

IV. DIRECTPACKET'S CONTENTIONS DO NOT COMPLY WITH THE DISCLOSURE REQUIREMENTS OF PATENT LOCAL RULE 3-1 .................. 6

  A. directPacket Does Not Identify the "Intermediate/Interim Protocol" and "Single-Port Communication Protocol" ..................................................... 6

  B. directPacket Does Not Identify the "Table" Elements ................................. 8

    1. "First" and "Second Protocol Conversion Tables" .................................. 8

    2. "Conversion Table" and "Second Conversion Table" ............................. 9

  C. directPacket Does Not Identify the "Security Key Repository" ................. 10

  D. directPacket Does Not Identify the RMX Source Code that Performs the "Converting" and "Translating" Steps .................................................... 11

  E. directPacket Does Not Disclose Its Doctrine of Equivalents Theories ................. 12

    1. directPacket Should Not Be Allowed to Reserve Placeholders for Unspecified Doctrine of Equivalents Theories ........................... 13

    2. "Table" Elements ('588 Patent, Claims 7, 9; '978 Patent, Claim 14) ................................................................................................... 13

    3. "SSL" Elements ('978 Patent, Claims 5, 17) ................................... 15

V. CONCLUSION ............................................................................................................ 15

i

DEFENDANT'S MOTION TO COMPEL
PATENT RULE 3-1 DISCLOSURES OR STRIKE
CASE NO: 5:19-CV-03918-LHK

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bender v. Adv. Micro Devices, Inc.*,
 No. C-09-1149 MMC (EMC), 2010 U.S. Dist. LEXIS 11539 (N.D. Cal. Feb. 1, 2010) ................................................................................................................5, 6

*CAP Co. v. McAffee Inc.*,
 No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 104697 (N.D. Cal. Aug. 10, 2015) .........................................................................................................................5

*CreAgri v. Pinnaclife*,
 No. 5:11-cv-06635-LHK (PSG), (N.D. Cal. Nov. 2, 2012) ..................................5, 13

*Dig. Reg. of Tex. LLC v. Adobe Sys. Inc.*,
 No. CV 12-01971-CW (KAW), 2013 US Dist. Lexis 23447 (N.D. Cal. Feb. 20, 2013) .........................................................................................................................5

*Graver Tank Mfg. Co., Inc. v. Linde Air Products Co.*
 339 U.S. 605 (1950) ..............................................................................................12, 15

*Network Caching Tech. LLC v. Novell, Inc.*,
 No. C-01-2019-VRW, 2002 U.S. Dist. LEXIS 26098 (N.D. Cal. Aug. 13, 2002) .........................................................................................................................5

*Shared Memory Graphics LLC v. Apple, Inc.*,
 812 F. Supp. 2d 1022 (N.D. Cal. 2010) ..................................................................5

*Warner-Jenkinson v. Hilton Davis Chemical Co.*,
 520 U.S. 17 (1997) ..................................................................................................12

**OTHER AUTHORITIES**

Patent L.R. 3-1 ............................................................................................1, 2, 5, 6

Patent L.R. 4-1 ......................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Court's Patent Local Rules require Plaintiff directPacket Research, Inc. ("directPacket") to fully disclose its infringement theories and the factual basis for them. Despite having full access to Polycom's source code and other technical documents for at least four months before directPacket served its Supplemental Infringement Contentions ("SICs") pursuant to Patent L.R. 3-1,[1] directPacket is still unable or unwilling to disclose its contentions for key claim limitations.

In particular, the SICs are deficient in three categories.  *First*, directPacket has not identified certain claimed protocols, tables, and repositories in the accused RPAD and VBP products.[2]  *Second*, directPacket has not identified the specific source code it contends performs the "converting" and "translating" steps in the accused RMX products.  *Third*, directPacket has not provided its Doctrine of Equivalents contentions.

### A.      Protocols, Tables and Repositories (RPAD and VBP Products)

directPacket has not identified the following claimed structures in the RPAD and VBP accused products:

1. "***intermediate protocol***" ('588 Patent, claims 1, 11, and 18);
2. "***interim protocol***" ('588 Patent, claims 7, 8, and 9);
3. "***single-port communication protocol***" ('978 Patent, claims 1 and 14; '828 Patent, claims 1, 11, and 17);
4. "***conversion table***" and "***second conversion table***" ('978 Patent, claim 14);
5. "***first protocol conversion table***" and "***second protocol conversion table***" ('588 Patent, claims 7 and 9); and
6. "***security key repository***" ('828 Patent, claim 13).

Rather, directPacket provides voluminous charts describing generally how the accused

---

[1] directPacket's Supplemental Infringement Contentions are attached as Exhibit 1 to the Declaration of Gregory S. Bishop in support of this motion.  Hereafter, Exh. XX is a reference to the corresponding exhibit XX in the Bishop Declaration.

[2] directPacket alleges infringement against three Polycom products:  RPAD (*See* Exh.1, App. A, D, and F), VBP (*see id.,* App. B, E, and F), and RMX (*see id.,* App. C).

products operate, without identifying specifically which structures directPacket contends meet these claim limitations. Unable to discern directPacket's contentions from the SICs, Polycom asked directPacket to identify the specific protocols, tables, and repository in the RPAD and VBP products. directPacket refused to answer—thereby thwarting the purpose of Patent L.R. 3-1. If directPacket has a good-faith belief that its SICs identify a specific protocol, table, or repository in the accused products, then it should be able to identify those elements and pinpoint where each limitation is implemented in the source code directPacket cited in its SICs. If directPacket cannot do so, then directPacket's infringement contentions for claims with those elements should be stricken for failing to comply with Patent L.R. 3-1.

### B. "Converting" and "Translating" Steps (RMX Products)

directPacket also fails to specifically identify where certain claimed functionality (*i.e.,* the "converting" and "translating" steps) is found in the accused RMX products. The asserted claims of the '588 Patent require *converting* a first protocol to an intermediate/interim protocol, and then *translating* the intermediate/interim protocol to a second protocol. Though directPacket cites generally to large portions of source code (over 1.1 million lines of source code) that incorporate many different functions, it does not specifically pinpoint where the claimed "converting" and "translating" occurs in the source code. Notably, directPacket identifies the same source code for both the converting and translating steps, thereby further illustrating that directPacket's SICs *do not* specifically identify the claimed function for each element of the asserted claims. (*See* § IV.D, below.) directPacket is either unable to identify a specific theory, or directPacket is withholding its theory to allow itself time to crystallize its position later in this litigation. In either case, directPacket should be required to comply with Patent L.R. 3-1 and identify the "converting" and "translating" steps with specificity in the source code cited in the SICs, and if it cannot do so, directPacket's infringement contentions for claims with those steps should be stricken.

### C. Doctrine of Equivalents

Finally, directPacket contends that if the claimed "tables" (which it has not identified) are not found in the RPAD and VBP products, then the products nonetheless infringe under the doctrine of equivalents. While directPacket contends that any differences between the claimed "tables" and the accused products are "insubstantial," it fails to identify the specific tables in the source code that are allegedly insubstantially different. Accordingly, the SICs do not set forth an adequate doctrine of equivalents contention as to the "table" elements.

In addition, directPacket alleges infringement under the doctrine of equivalents for the other asserted claims that do not include the "table" limitations, but provides no substantive contentions to support those allegations. These boilerplate allegations do not set forth adequate doctrine of equivalents contentions, and such bald allegations cannot be held as a placeholder.

Accordingly, directPacket's allegations of infringement under the doctrine of equivalents should be stricken in their entirety for all claims.

## II. BACKGROUND AND PROCEDURAL HISTORY

directPacket inappropriately sued Polycom on June 21, 2018 in the Eastern District of Virginia, alleging infringement of U.S. Patent Nos. 7,773,588, 7,710,978, and 8,560,828, which are attached as Exhs. 2, 3, and 4, respectively (the "Asserted Patents"). (D.I. 1.) On July 3, 2019, the Eastern District of Virginia transferred the case to the Northern District of California pursuant to a contractual forum selection clause. (D.I. 132.) After transfer, directPacket informed the Court: "[w]e have submitted complete Infringement Contentions," but added that it would "supplement" its contentions. (Exh. 5 at 13:10-23.) The Court ordered that Infringement Contentions must be completed before exchanging claim terms for construction under Patent L.R. 4-1, and the Court set October 7, 2019 as the deadline for Supplemental Infringement Contentions, November 1, 2019 as the deadline for Supplemental Invalidity Contentions, and November 8, 2019 for the exchange of claim construction terms. (D.I. 202.)

Unlike most cases in the District, directPacket's SICs came after technical document discovery was already complete, including production of source code. Polycom produced its RPAD source code on April 12, 2019 (*see* D.I. 79 at 2); and its RMX source code on June 10, 2019 (*see* D.I. 101 at 2.)  Third-party Edgewater Networks, Inc. ("Edgewater") produced the VBP source code by May 15, 2019. (Exh. 6.)  Moreover, Polycom provided a narrative description of the functionality of the source code for the RPAD and RMX products on June 10, 2019.  (*See* D.I. 101 at 2.)

directPacket served its Supplemental Infringement Contentions ("SICs") on October 7, 2019, alleging infringement by Polycom's RPAD, VBP, and RMX products ("Accused Products").  (Exh. 1, Apps. A-G.)  After receiving directPacket's SICs, Polycom promptly attempted to evaluate those contentions, but was unable to determine from the contentions where and how directPacket alleged the Accused Products practice certain claim limitations.  Accordingly, on October 23, 2019, Polycom wrote to directPacket asking for certain clarification of the SICs before the November 1, 2019 Invalidity Contention deadline.  (Exh. 7.)  directPacket responded on October 30, 2019 by merely repeating its vague allegations in the SICs, but declining to provide further clarity.  (Exh. 8.)  Polycom responded on November 5, 2019 asking directPacket to meet and confer, and directPacket agreed to meet on November 12, 2019.  In preparation for that meeting, Polycom asked directPacket to respond to the following questions:

1. What do your SICs contend is the "intermediate protocol" in each of the accused products?

2. What do your SICs contend is the "single-port communication protocol" in each of the accused products?

3. What do your SICs contend is the "first protocol conversion table" in each of the accused products?

4. What do your SICs contend is the "second protocol conversion table" in each of the accused products?

5. What do your SICs contend is the "security key repository" in each of the accused products?

(Exh. 9.)  directPacket refused to answer these fundamental questions, and further

4

refused to identify which source code directPacket contends is "insignificantly different" from the "table" limitations for its doctrine of equivalents allegations. (Exh. 10.)

### III.  LEGAL STANDARD

Patent L.R. 3-1 requires a party claiming patent infringement to provide a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality . . . ." Infringement disclosures must give fair notice of the plaintiff's infringement theories. *Dig. Reg. of Tex. LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 US Dist. Lexis 23447, at *12-13 (N.D. Cal. Feb. 20, 2013). These disclosures "take[] the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Id*. at *10-11; *Network Caching Tech. LLC v. Novell, Inc.*, No. C-01-2019-VRW, 2002 U.S. Dist. LEXIS 26098, at *12 (N.D. Cal. Aug. 13, 2002). "The purpose underlying Rule 3-1 is to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *CreAgri v. Pinnaclife*, No. 5:11-cv-06635-LHK (PSG), at * 5 (N.D. Cal. Nov. 2, 2012); *Bender v. Adv. Micro Devices, Inc.*, No. C-09-1149 MMC (EMC), 2010 U.S. Dist. LEXIS 11539, at *2 (N.D. Cal. Feb. 1, 2010). The infringement contentions "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *CreAgri at *5*.

Patent L.R. 3-1 does not allow for parties to merely recite boilerplate language to assert the doctrine of equivalents as an alternative theory. *CreAgri* at *17; *CAP Co. v. McAffee Inc.*, No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 104697, at *11 (N.D. Cal. Aug. 10, 2015). Rather, the contentions must specify in what way the accused products infringe under the doctrine of equivalents. *CreAgri* at *17. Simply stating that the patentee intends to assert the doctrine of equivalents as an alternative theory does not "provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010).

### IV. DIRECTPACKET'S CONTENTIONS DO NOT COMPLY WITH THE DISCLOSURE REQUIREMENTS OF PATENT LOCAL RULE 3-1

In its SICs, directPacket fails to disclose its infringement theories, subverts the Patent Local Rules, and undercuts a streamlined discovery process premised on crystalized contentions. directPacket refuses to identify key claim limitations in the Accused Products—even when specifically asked to do so. This failure prejudices Polycom's ability to prepare its defense against directPacket's allegations and to meaningfully engage in the claim construction process.[3] directPacket either has not found a specific infringement theory after reviewing the source code and other technical documentation, or it is impermissibly attempting to delay crystalizing its theories to have flexibility later in the proceedings. *Bender,* 2010 U.S. Dist. LEXIS 11539, at *2 ("The purpose underlying Rule 3-1 is to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed.") directPacket is required to clearly disclose its contentions, and if it cannot specifically identify each claim element in the Accused Products within the bounds of its SIC disclosures, those contentions should be stricken.

#### A. directPacket Does Not Identify the "Intermediate/Interim Protocol" and "Single-Port Communication Protocol"

The asserted claims in this case all require converting from a "*first protocol*" or a "*multiport communication protocol*" to an "*intermediate/interim protocol*" or a "*single-port communication protocol*."[4] Thus, to show infringement, directPacket must identify

---

[3] The parties dispute the meaning of several of the terms at issue in this Motion, including "intermediate/interim protocol," "table," "converting" and "translating." Polycom is prejudiced in the claim construction process if directPacket does not clearly identify its contentions for these terms against Polycom's products.

[4] The "converting" steps are claimed as follows:

- Claims 1, 11 and 19 of the '588 Patent recite "converting said first protocol into an *intermediate protocol*." (Exh. 2 ('588 Patent) at 7:32, 8:62, 10:1-2.)
- Claims 7, 8 and 9 of the '588 Patent recite "a protocol conversion utility to convert said first protocol into an *interim protocol*." (*Id*. at 8:32-33.)
- Claims 1 and 14 of the '978 Patent and Claims 1, 11 and 17 of the '828 Patent recite "convert[ing] . . . said plurality of multiport packets [. . .] into a plurality of

an "intermediate protocol," an "interim protocol," and/or a "single-port communication protocol" in each Accused Product. Additionally, directPacket must identify specific source code that implements the alleged protocols.

For the accused RMX products, directPacket specifically identifies the SIP or H.323 protocols as the alleged "intermediate/interim protocol,"[5] so Polycom does not seek additional clarification of the alleged "intermediate/interim protocol" for RMX. In contrast, directPacket's contentions for the RPAD and VBP products do not identify a specific "intermediate/interim" protocol. Rather, directPacket vaguely contends that the accused RPAD and VBP products "necessarily *must* 'convert[]' H.323 and SIP packet data 'into an intermediate [interim] protocol' that is able to pass through the tunnel formed through the firewall." (Exh. 1, App. A at A-25, A-113, A-158, A-252 (RPAD); App. B at B-15, B-68, B-100, B-155 (VBP) (emphasis added).)

Similarly, directPacket does not identify a "single-port communication protocol" for its contentions against RPAD and VBP. Instead, directPacket merely states that the accused RPAD and VBP products "*must* 'convert' the packet data received from the endpoint communication devices 'into a plurality of single-port packets,' which are *necessarily* 'in a single-port communication protocol.'" (Exh. 1, App. D at D-23, D-125; App. F at F-24, F-108 (RPAD); App. E at E-14, E-86; App. G at G-18, G-77, G-129 (VBP) (emphasis added).)

At this stage in the proceedings, with directPacket having access to the entirety of the source code and other technical documents for the accused RPAD and VBP products for over four months, it is not sufficient for directPacket to merely allege that the claimed protocols "must" be in the accused products. Rather, directPacket must specifically identify what it contends are the claimed "protocols" in the Accused Products. If it cannot do so, directPacket's infringement contentions for the claims including those terms should be stricken.

---

single-port packets in a *single-port communication protocol*." (Exh. 3 ('978 Patent) at 8:55-58, 10:9-13; Exh. 4 ('828 Patent) at 14:4-7, 15:25-29, 16:39-42.)

[5] The SICs for RMX state that "the Collaboration Servers and MCUs may communicate with one another using another IP-based communication protocol (i.e., 'an intermediate protocol'), such as SIP or H.323 respectively …." (Exh. 1, App. C at C-14.)

### B. directPacket Does Not Identify the "Table" Elements

Several asserted claims include one or more "table" elements (*i.e.*, "first protocol conversion table" ('588 Patent, claim 7), "second protocol conversion table" ('588 Patent, claim 9), and "conversion table" and "second conversion table" ('978 Patent, claim 14).[6] Thus, directPacket must identify a "table" in each of the accused RPAD and VBP products.[7] Additionally, directPacket must identify the specific source code that implements those identified tables. Yet, despite having the source code and technical documents for the accused RPAD and VBP products for over four months, the SICs do not identify the recited tables or pinpoint the source code implementing the alleged tables.

#### 1. "First" and "Second Protocol Conversion Tables"

**RPAD Product:** directPacket does not identify any tables in the RPAD products that it contends correspond to the "first protocol conversion table" or the "second protocol conversion table" in the '588 Patent. Instead, the SICs allege infringement via a "first protocol conversion table" by merely restating the claim language and contending "*upon information and belief*" that RPAD practices the claims:

> ***Upon information and belief***, the conversion is performed using "a first protocol conversion table that contains a plurality of first protocol messages and a plurality of interim protocol messages, wherein said plurality of interim protocol messages correspond to ones of said plurality of first protocol messages."

(Exh. 1, App. A at A-106 (emphasis added).) directPacket cites to copious amounts of source code (over 180,000 lines of code for RPAD 3.0, nearly 360,000 lines of code for RPAD 4.2.5, and more than 20,000 additional lines of code in hard-copy printouts), but does not identify an alleged "first protocol conversion table" in that source code. (*Id.* at A-108-109.) Similarly, for the "second protocol conversion table," the SICs repeat the same contentions "*upon information and* belief," but in this case, do not identify *any* source code or other evidence for this conclusory proposition. (*Id.* at A-133.)

---

[6] "Table" does not appear in the asserted claims of the '828 Patent.

[7] directPacket does not assert claims involving the "table" elements against the RMX products.

**VBP Product:** directPacket's allegations regarding the VBP product are even more sparse. For VBP, directPacket does not specifically allege that VBP literally meets the "first protocol conversion table" limitation. (Exh. 1, App. B at B-65.) Similarly, for the "second protocol conversion table," directPacket again contends the claimed "table" exists only "upon information and belief," but does not identify the "table" and does not identify any source code or other supporting evidence. (*Id. at* B-85.) Accordingly, directPacket's contentions that the VBP products literally infringe claims that include these "table" elements (claims 7 and 9 of the '588 Patent) should be stricken.

### 2. "Conversion Table" and "Second Conversion Table"

For the "conversion table" limitation in the '978 Patent, directPacket merely alleges that the accused RPAD and VBP products "***must*** 'convert' the packet data received from the endpoint communication devices using 'a conversion table' into 'a plurality of single-port packets,' which are necessarily 'in a single-port communication protocol.'" (Exh. 1, App. D at D-125 (RPAD), App. E at E-86 (VBP) (emphasis added).) directPacket, however, does not identify any "conversion table," but instead cites to voluminous source code without pinpointing where the alleged "table" is within that code. (*Id.,* App. D at D-128-D130 (citing over 180,000 lines of code for RPAD 3.0, nearly 360,000 lines of code for RPAD 4.2.5, and more than 20,000 additional lines of code in hard-copy printouts); App. E at E-86-89 (citing 735 pages of VBP source code in hard-copy printouts).)

Similarly, directPacket does not identify a "second conversion table," instead contending only that the accused RPAD and VBP products "***must*** reconvert the single-port packet data received from the other RPAD [or VBP] communication device through the tunnel using 'a second conversion table' back into the H.323 or SIP protocol . . .." (*Id.,* App. D at D-148, App. E at 100.) Again, directPacket identifies voluminous source code, but fails to specify any "table" or identify which source code implements the alleged "second conversion table." (*Id*., App. D at D-148-151; App. E at E-101-103.)

Because directPacket is unable to identify any of the claimed "tables" after analyzing the Accused Products, source code, and technical documentation, its infringement contentions for

9

claims that include these "table" elements ('588 Patent, claims 7, 9; '978 Patent, claim 14) should be stricken.

### C. directPacket Does Not Identify the "Security Key Repository"

Claim 13 of the '828 Patent requires both a "security key" and a "security key repository."[8] directPacket generically contends that the accused RPAD and VBP products include "a security key repository within each of said one or more shared controllers and said individual controller," but fails to specifically identify the alleged "security key repository" in the source code or elsewhere. (Exh. 1, App. F at F-135-141, App. G at G-98-101.) This failure is especially acute because directPacket's contentions regarding the alleged "security key" are inconsistent and scattershot. For example, directPacket identifies a variety of disjointed theories about what may constitute an alleged "security key":

- "Each message exchanged between the local internal RPAD communication device and local external RPAD communication device, encrypt a phrase using MD5 (*i.e.,* 'a security key') which are verified by the respective receiving RPAD communication device." (Exh. 1, App. F at F-139 RPAD));

- "when establishing the tunnel, the internal and external RPAD communication devices perform 'the standard TLS hand shake with cipher suite 'DHE-RSA-AES256,' as part of which 'a security key' is 'transmitted' . . ." (Exh. 1, App. F at F-139 (RPAD), *See also* App. G at G-101 (VBP));

- "H.323 and SIP both provide mechanisms for authentication in which a password or secret key (*i.e.,* 'a security key'); is sent as part of the call request." (Exh. 1, App. F at F-140 (RPAD), *See also* App. G at G-101 (VBP)).

Regardless of what directPacket ultimately adopts as its alleged "security key," directPacket fails to identify any "security key repository" for any of those theories. Because it fails to identify a "security key repository," despite having access to the source code and technical documents for the Accused Products, directPacket's infringement contentions for the "security key repository" limitation of claim 13 of the '828 Patent should be stricken.

---

[8] Claim 13 of the '828 Patent recites: "a security key repository within each of said one or more shared controllers and said individual controller, wherein said one or more shared controllers and said individual controller transmit a security key for verification by said external controller for each communication request issued to said external controller."

### D. directPacket Does Not Identify the RMX Source Code that Performs the "Converting" and "Translating" Steps

In addition to requiring "converting" a first protocol into an intermediate protocol (s*ee supra,* note 4), the '588 Patent also requires "translating" the intermediate protocol to a second protocol.[9] For the RMX product, directPacket does not specifically identify where these "converting" and "translating" steps are found in the RMX source code. Rather, directPacket only identifies large quantities of source code, leaving Polycom to guess which specific source code directPacket contends actually performs the recited functions.

Essentially, directPacket's contentions amount to listing an expansive amount of source code and contending the claimed functions are in there somewhere. Notably, directPacket identifies the same source code for both the converting and translating steps, thereby further illustrating that directPacket's SICs *do not* specifically identify the claimed function for each element of the asserted claims. (*Compare* Exh. 1, App. C at C-14, C-33, C-54 *with* Exh.1, C-16, C-35, C-56 respectively (identifying identical RMX source code disclosures for "converting" and "translating").) In particular, directPacket identifies the same five RMX source code directories *in their entirety*—totaling over 1.1 million lines of code—as purportedly disclosing both of the disparate "converting," and "translating" limitations. (Exh. 1, App. C at C-14, C-16, C-33, C-35, C-54, C-56.) Notably, directPacket does not cite to *any* specific hard-copy printouts of the RMX source code, which would generally be used to provide pinpoint cites.[10] (*See generally*, Exh. 1, App. C.)

Determining which particular source code performs the claimed functionality in that vast amount of source code is not possible without pinpoint cites to the specifically accused functionality. For example, directPacket describes certain functionality of the RMX products in its contentions, but does not explain which of that functionality, if any, constitutes "converting"

---

[9] The "translating" steps are claimed as follows:

- Claims 1, 11 and 18 of the '588 Patent each recite "translating said intermediate protocol into a second protocol" (Exh. 2 at 7:33-35, 8:66-67 and 10:6-7.)

[10] In fact, to date, directPacket has not even generated any hard-copy printouts of the RMX source code.

11

DEFENDANT'S MOTION TO COMPEL
PATENT RULE 3-1 DISCLOSURES OR STRIKE
CASE NO: 5:19-CV-03918-LHK

or "translating." Rather, directPacket merely explains that two or more RMX devices can communicate via an H.323 or SIP "cascade[d] communication link," and describes the particular RMX source code responsible for establishing such a cascaded link. (Exh. 1, App. C at C-13-14, C-15, C-32-33, C-34-35, C-53-54, C-55.) It does not describe how or where any "converting" or "translating" occurs, leaving Polycom with no understanding of how directPacket applies those claim terms.

directPacket then makes the conclusory statement that when endpoint devices connect to individual RMX devices using one protocol (such as H.323), while the cascaded RMX devices communicate using another (such as SIP), the RMX "Collaboration Server [is] responsible for 'converting' there between." (Exh. 1, App. C at C-14, C-33, C-54.) Likewise, directPacket concludes that the RMX devices "***must*** translate" into a protocol that is compatible with each endpoint device. (Exh. 1, App. C at C-16, C-35, C-56.) Yet, in support of each of these conclusory statements, directPacket simply block-cites to the same five source code directories in their entirety, comprising over 1.1 million lines of code. (Exh. 1, App. C at C-14, C-16, C-33, C-35, C-54, C-56.)

If directPacket can identify specific source code in its SICs that perform each of the "converting" and "translating" steps, it should do so. If it cannot, then the infringement contentions for the claims that include these limitations should be stricken.

### E.     directPacket Does Not Disclose Its Doctrine of Equivalents Theories

The Supreme Court made clear that it is necessary under the doctrine of equivalents to show that every element of the patented invention, or its substantial equivalent, is present in the accused product. *Warner-Jenkinson v. Hilton Davis Chemical Co.,* 520 U.S. 17 (1997). A patentee may prove infringement under the doctrine of equivalents by showing it performs substantially the same function, in substantially the same way, to obtain the same result." *Graver Tank Mfg. Co., Inc. v. Linde Air Products Co.* 339 U.S. 605, 609 (1950). directPacket has not sufficiently disclosed any theory under the doctrine of equivalents, so its bare contentions should be stricken.

### 1. directPacket Should Not Be Allowed to Reserve Placeholders for Unspecified Doctrine of Equivalents Theories

For certain claims, directPacket alleges that the Accused Products infringe under the doctrine of equivalents, but advances absolutely no doctrine of equivalents contention in its claim charts. This includes the following claims:

- '588 Patent, Claims 1, 2, 11-12, and 18-19;
- '978 Patent, Claims 1-4, 6, and 12; and
- '828 Patent, All Asserted Claims 1-3, 11-15, 17-18.

(*See generally*, Exh. 1, App. A-G.) Because it has not provided any basis for its doctrine of equivalents contentions, directPacket's bare allegations for these claims should be stricken, precluding any doctrine of equivalents theories for those claims. *CreAgri* at *17.

### 2. "Table" Elements ('588 Patent, Claims 7, 9; '978 Patent, Claim 14)

Recognizing that the Accused Products do not include the claimed "table" elements, as evidenced by its failure to identify any such tables in the source code (*see* § IV.B, above), directPacket attempts to salvage infringement by raising the doctrine of equivalents. But reliance on the doctrine of equivalents does not relieve directPacket of its requirement to specifically identify the structure that it contends is equivalent to the claimed table. *CreAgri* at *17 ("The doctrine of equivalents does not exist 'to give a patentee a second shot at proving infringement' if it is not literally present.").

Here, directPacket does not identify any specific structure or source code that it contends is "substantially equivalent" to the various "table" elements. Rather, it provides only nonspecific doctrine of equivalent contentions as follows:

> To the extent that this claim element is not literally infringed, the [Accused Products] infringe under the doctrine of equivalents because the "[] table" claimed *is insubstantially different from the [Accused Products'] Source Code*. As a general matter, the use of a "[] conversion table" for converting can be effectuated through the use of equivalent program code. For example, program code *may employ* a series of discrete operations to manipulate packet data, changing the packet between various states and ultimately resulting in a converted packet. Given that each of the operations

13

> ***may be conditionally applied*** (*e.g.*, conditioned on different events having occurred or parameters being present), various resulting converted packets ***may be created***. A "[] conversion table" ***may reflect*** the net effect of various permutations and combinations of these discrete operations and, thus, can be used in lieu of applying a sequence of operations. Furthermore, a particular sequence of operations is equivalent to a "correspond[ence]" between messages in the first and intermediate protocols.

(Exh. 1, A-110, A-133-134, B-65, B-86, D-131, D-151, E-90, E-104 (emphasis added).) directPacket's bare contention that the claimed "table" is insubstantially different from the Accused Product's source code, is woefully inadequate. (*Id.*) This broad assertion directed to the entirety of the Accused Product is, at best, conclusory, and is not sufficient to inform Polycom which structures in the source code are allegedly equivalent to the "table" elements.

directPacket states that the "program code ***may employ*** a series of discrete operations to manipulate packet data, changing the packet between various states and ultimately resulting in a converted packet." *Id.* This is not sufficient to inform Polycom of the basis for directPacket's contentions, because directPacket does not identify any "program code" that allegedly employs a "series of discrete operations." *Id.* Nor does directPacket identify what "discrete operations" it contends are equivalent to the claimed "tables." *Id.* Therefore, directPacket's discussion about what unidentified program code "may" do is insufficient to meet its burden to show where and how the claimed elements are found in the Accused Products.

Notably, directPacket's contentions are the same for each of the "table" elements, even though each has a different claimed function. For example, claim 14 of the '978 Patent requires a "conversion table . . . to convert said plurality of multiport packets into a plurality of single-port packets in a single-port communication protocol…." (*See* note 4, above.) Claim 14 also requires a "second conversion table for reconverting said converted plurality of single port packets into said multiport communications protocol…." (*See* note 9, above.) Yet, directPacket provides the same ambiguous contentions for both the "conversion table" and the "second conversion table." The same is true of the "first" and "second protocol conversion tables" of the '588 Patent.

These facts further highlight the deficiency in directPacket's contentions, as directPacket does not identify any table in its contentions, much less two different tables called for by the asserted claims.

Because directPacket does not identify any structure or source code that is allegedly equivalent to the claimed "table" elements, its insufficient doctrine of equivalents arguments for claims 7 and 9 of the '588 Patent and claim 14 of the '978 Patent should be stricken.

### 3. "SSL" Elements ('978 Patent, Claims 5, 17)

Claims 5 and 17 of the '978 Patent each recite that the "single-port communication protocol [comprises/is] Secure Sockets Layer (SSL) protocol." (Exh. 1, App. D at D-74, D-178.) directPacket's only disclosure about its theory under the doctrine of equivalents for this element is:

> To the extent that this claim element is not literally infringed, the Accused Products infringe under the doctrine of equivalents because they perform substantially the same function in substantially the same way to achieve the same result, and/or are insubstantially different from the claimed invention, *as set forth above.*

(Exh. 1, App. D at D-78, D-182) (emphasis added.) But the contentions "*set forth above*" do not provide any function/way/result analysis. (*Id.*) This bare recitation of legal requirements does not apprise Polycom of directPacket's doctrine of equivalents contentions. It does not described what "function" it contends performs "substantially the same function," what "way" it contends is "substantially" the same way," and what "result" it contends is "the same result." *Graver Tank,* 339 U.S. at 609 (1950). Moreover, it does not provide any factual basis to conclude that the differences are insubstantial.

Because directPacket has not provided the basis for its doctrine of equivalents argument for claims 5 and 17 of the '978 Patent, its doctrine of equivalents contentions for those claims should be stricken.

### V. CONCLUSION

Polycom is entitled to fair notice of directPacket's infringement contentions. By

15

this stage in the litigation, with technical document discovery (including production of source code) long ago provided, directPacket's theories should be sufficiently formed and crystalized to provide the notice to which Polycom is entitled, especially in light of the upcoming claim construction briefing. To the extent directPacket can specifically identify the undisclosed claim elements in its SICs and pinpoint the specific source code in the SICs that implement those claim elements, it should do so. To the extent directPacket cannot do so, then the SICs should be stricken as to those claim elements. Moreover, directPacket's undisclosed doctrine of equivalents contentions should be stricken for all asserted claims: keeping them as a place holder should not be an option.

DATED: December 5, 2019                     Respectfully submitted,

                                                                                PEPPER HAMILTON LLP

                                                                                By: */s/ Gregory S. Bishop*
                                                                                      Goutam Patnaik
                                                                                      Tuhin Ganguly
                   Gregory S. Bishop
                   Suparna Datta
                   Ryan H. Ellis
                   David Shaw
                   Brittanee L. Friedman

                   MCDERMOTT WILL & EMERY LLP
                   Russell Hayman
                   Jon Dean
                   Tala Toufanian Jayadevan
                   Amol A Parikh

Counsel for Defendant and Counterclaimant POLYCOM, INC.