UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTPACKET RESEARCH, INC., <br><br>  Plaintiff, <br><br> v. <br><br> POLYCOM INC, <br><br>  Defendant. | Case No. 3:19-cv-03918-JD <br><br> **ORDER RE JUDGMENT ON THE PLEADINGS** |

Plaintiff directPacket Research, Inc., sued defendant Polycom, Inc., for infringement of three patents related to methods of multimedia communication across computer networks. *See* Dkt. No. 1. Polycom filed petitions for *inter partes* review of all three patents. The Patent Trial and Appeal Board (PTAB) found that all asserted claims in two of directPacket's three patents were unpatentable. Only U.S. Patent No. 7,773,588 (the '588 patent) remains at issue in this case. Polycom says that the '588 patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101 and related cases, and asks for a dismissal under Federal Rule of Civil Procedure 12(c). Dkt. No. 257. The first, second, and third claims in the complaint, which concern the '588 patent, are dismissed with leave to amend.

## BACKGROUND

As alleged in the complaint, the '588 patent was issued on August 10, 2010 and is assigned to directPacket. Dkt. No. 1 at 5. The patent is directed to "a system and method for facilitating multimedia communication with multiple communication protocols." Dkt. No. 1-1 at 2:1-5. As the background of the patent states, "Multimedia communication systems . . . are typically designed to be implemented in one of the various protocols. . . . A problem arises when a party using an H.323 endpoint on one communication system designed to use H.323 desires to

communicate with another party using a different protocol endpoint on another communication system." *Id.* at 1:48-58. The patent is said to "allow[] communication devices that use different communication protocols to participate in multimedia communications in the same system." *Id.* at 2:25-27.

The '588 claim comprises 23 claims in total, including four independent claims: Claims 1, 7, 11, and 18. Dkt. No. 1-1 at 7:25-10:60. directPacket asserts claims 1-4, 6-9, 11-14, 16-21, and 21. Dkt. No. 257 at 5.

Claims 1 and 7 recite:

1. A method for multimedia communication comprising:

    receiving a multimedia data stream at a communication controller in a first protocol from a communication device, wherein the first protocol comprises a signaling protocol;

    detecting a type of said first protocol;

    converting said first protocol into an intermediate protocol

    translating said intermediate protocol into a second protocol, wherein the second protocol comprises a signaling protocol; and

    transmitting said multimedia data stream in second protocol to a target communication device;

    wherein said first protocol comprises one of a text-based protocol and a binary protocol and wherein second protocol comprises one of a binary protocol and a text-based protocol.

7. A communication controller in a multimedia communication system, said communication controller comprising:

    A message interface to transceive multimedia data from a communication endpoint in a first protocol, wherein the first protocol comprises a signaling protocol, and wherein said first protocol is either a text-based protocol or a binary protocol;

    A protocol signaler to determine a type of said first protocol;

    A first protocol conversion table that contains a plurality of first protocol messages

2

|   |   |
|---|---|
| 1 | and a plurality of interim protocol messages, wherein said plurality of interim |
| 2 | protocol messages correspond to ones of said plurality of first protocol |
| 3 | messages; |
| 4 | A protocol conversion utility to convert said first protocol into an interim protocol |
| 5 | using said first protocol conversion table; and |
| 6 | A network interface to transceive said multimedia data in said interim protocol to a |
| 7 | target communication endpoint. |

Dkt. No. 1-1 at 7:25-8:37.

Claim 11 is identical to Claim 1, except that the conversion is performed "irrespective of a second protocol in which the multimedia data stream is to be transmitted to a target communication device." Dkt. No. 1-1 at 8:57-9:6.

Claim 18 recites a "computer program product having a computer readable storage medium with computer program logic" comprising code for performing each of the five steps laid out in Claims 1 and 11 (receiving, detecting, converting, translating, and transmitting). Dkt. No. 1-1 at 9:54-10:13.

Polycom previously petitioned for *inter partes review* of the '588 patent, challenging Claims 1-23 as obvious and consequently unpatentable. The PTAB concluded that all of the challenged claims were rendered obvious by the prior art. *Polycom, Inc. v. directPacket Rsch., Inc.*, No. IPR2019-01233, 2021 WL 96053 at *1 (P.T.A.B. Jan. 11, 2011). The decision relied on a construction of "multimedia data stream" as a stream consisting of signaling and media messages, but not necessarily both at the same time. directPacket appealed the PTAB's ruling on the claim construction issue. The Federal Circuit vacated the ruling and remanded, finding that a "multimedia data stream" must include media, and not only signaling, messages. *directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2021-1661, ___ F. App'x ___, 2022 WL 243918 (Fed. Cir. Jan. 26, 2022). On remand, the PTAB found that the '588 patent was not rendered obvious under the new construction. *See Polycom, Inc. v. directPacket Rsch., Inc.*, No. IPR2019-01233 (P.T.A.B.

Aug. 26, 2022).[1]

## DISCUSSION

### I. LEGAL STANDARDS

Rule 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Federal Rules treat Rule 12(c) and Rule 12(b)(6) motions as functionally identical, and the standards for a Rule 12(b)(6) motion apply to a Rule 12(c) motion. *See Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017). Where there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law, a Rule 12(c) motion may be granted. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

"Challenges to patentability under Section 101 may be brought solely on the pleadings, including on a Rule 12(c) motion for judgment on the pleadings." *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015). The question of eligibility may be determined on a Rule 12(c) motion "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)). The inquiry in a motion to dismiss is confined to the contents of the complaint and the plain words of the patent that is incorporated by reference. *See Broadcom Corp. v. Netflix Inc.*, ___ F. Supp. 3d ___, 2023 WL 3958361, at *4 (N.D. Cal. 2023); *Linquet Techs., Inc. v. Tile, Inc.*, 559 F. Supp. 3d 1101, 1106 (N.D. Cal. 2021). A patentee cannot avoid dismissal for ineligible claims solely based on conclusory statements or unfounded allegations later proved to be unsupported. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

directPacket did not raise any factual disputes that might make a judgment on the pleadings inappropriate. In addition, neither side suggests that resolution of the Section 101 question should be deferred until after claim construction. As a general rule, claims need not be

---

[1] This decision is not currently available on reporter services, and the citation is to the PTAB website.

4

formally construed before a Section 101 challenge is decided.  *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *Aatrix Software*, 882 F.3d at 1125.  Polycom states that claim construction is not material to Section 101 eligibility here, and directPacket does not disagree or otherwise identify construction disputes that it contends must be resolved first.  Consequently, the Section 101 inquiry may properly be made at this stage of the case.

Patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof."  35 U.S.C. § 101.  "[L]aws of nature, physical phenomena, and abstract ideas" are "specific exceptions to Section 101's broad patent-eligibility principles."  *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (internal quotations and citation omitted).  These exclusions guard against overbroad patent protection which "would risk disproportionately tying up the use of the underlying ideas."  *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 217 (2014).

The Supreme Court has established a two-part test for patent eligibility under Section 101.  First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as a law of nature, natural phenomenon, or abstract idea.  *Alice* at 218; *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022).  In conducting the first step of the *Alice* test, the Court may "compare claims at issue to those claims already found to be directed to an abstract idea in the previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The Court may also take into account undisputed facts about well-known practices that have stood the test of time.  *Yu v. Apple Inc.*, 1 F.4th 1040, 1045-46 (Fed. Cir. 2021); *Juniper Networks Inc. v. Swarm Tech. LLC*, 3:20-cv-03137, 2022 WL 3031211, at *4 (N.D. Cal. Aug. 1, 2022).  Oversimplification of the claims must be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Alice*, 573 U.S. at 217.

If a patent is directed to a patent-ineligible concept, the second step in *Alice* looks for an "'inventive concept' -- *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept]

5

itself." *Alice*, 573 U.S. at 217-17 (alteration in original) (internal quotations and citation omitted); *see also Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). The "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve "more than the performance of '"well-understood, routine, conventional activit[ies]" previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC*, 899 F.3d at 1290-91.

directPacket suggests that the '588 patent solves a technical problem in data transmission. Consequently, the Court will also determine "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335; *see also BSG Tech LLC*, 899 F.3d at 1287.

## II.   TIMELINESS

To start the discussion, directPacket raises the procedural objection that Polycom's 12(c) motion is untimely. Dkt. No. 269 at 5-6. Rule 12(c) motions must be filed "[a]fter the pleadings are closed -- but early enough not to delay trial." Fed. R. Civ. P. 12(c).

The objection is not well taken. It may raise an eyebrow that Polycom filed a Rule 12(c) motion in 2023 for a case initially filed in 2019, but much has happened in multiple forums to make this timing plausible. The parties have spent the past five years actively litigating this case before the PTAB and the Federal Circuit, in addition to here. Polycom filed IPR petitions in June 2019, not long after the case started. *See* Dkt. No. 186. The Court granted a stay when the PTAB instituted IPR, which remained in place from January 2020 to January 2023. *See* Dkt. Nos. 233, 248. The stay was lifted in January 2023 after directPacket's appeals of the PTAB determinations

against it were resolved by the Federal Circuit. *See* Dkt. Nos. 241, 248. Polycom filed the present motion just one month later in February 2023. Dkt. No. 257.

directPacket has not identified any meaningful prejudice from the filing of a Rule 12(c) motion at this time. The motion will not delay trial because a trial date has not been set. directPacket says that the "parties have expended thousands of attorney hours" on the litigation, including "the preparation of multiple expert reports at significant cost," Dkt. No. 269 at 5, but most of that work was not driven by the '588 patent alone, and expenses were incurred by both parties. It is certainly true that Section 101 challenges should be raised sooner rather than later, as case circumstances permits, *see Broadcom Corp.*, ___ F. Supp. 3d ___, 2023 WL 3958361, at *6, but the record before the Court does not indicate that Polycom was unduly slow in filing the Rule 12(c) motion, or acted in manner calculated or otherwise likely to unfairly prejudice directPacket. In addition, declining to determine the Section 101 challenge at this time could result in an ineligible patent going all the way to a jury verdict that would need to be vacated in post-trial proceedings. That would be a disastrous waste of the jury's, the Court's, and the parties' time and resources.

## III. CLAIM 1 IS A REPRESENTATIVE CLAIM

The parties disagree whether Claim 1 is a representative claim for the purposes of Polycom's motion. Dkt. No. 257 at 7; Dkt. No. 269 at 9-10. The Court concludes that it is for purposes of the patent eligibility inquiry.

To determine eligibility, the Court may designate a claim or a subset of claims as representative. This is particularly appropriate when "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," *Berkheimer v. HP Inc*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), or when the other claims do not contain an additional "inventive concept" that transforms the corresponding claim into a patent-eligible application of an otherwise ineligible claim, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

directPacket did not provide a good reason for not treating Claim 1 as representative. Claim 11 is nearly identical to Claim 1, except that the conversion step is performed "irrespective

of a second protocol." Dkt. No. 1-1 at 8:63-65. This alteration that lacks the "distinctive significance" that would preclude grouping the two claims together analytically. *Berkheimer*, 881 F.3d at 1365.

directPacket says that Claims 2 and 12 feature an additional communication step prior to translation, enabling the transmission of the multimedia data stream over the Internet as opposed to transmission between generic communication controllers. Dkt. No. 269 at 8. But Internet communication is already expressly contemplated in the background section of the patent, which begins with the statement, "The Internet may be used for many forms of communication." Dkt 1-1 at 1:13-14. In fact, the entirety of the '588 patent appears directed at the interoperability issues emergent on the Internet. Consequently, Claims 2 and 12 do not introduce an "inventive concept" that significantly transforms the scope of issues already addressed by Claims 1 and 11. *Content Extraction*, 776 F.3d at 1349.

directPacket says that Claims 3, 4, 13, and 14 provide concrete instructions and "specific methods" for the "converting" and "translating" steps of Claims 1 and 11. Dkt. No. 269 at 8. Claims 3, 4, 13, and 14's concrete instructions amount to the use of a lookup table mapping elements of original messages to their corresponding translations. Dkt. No. 1-1 at 7:49-9:42. The protocol tables recited by Claims 3, 4, 13, and 14 are readily analogized to a human consulting a translation dictionary. Consequently, analyzing whether Claim 1 is directed to translation will encompass the corresponding analysis about whether Claims 3, 4, 13, and 14 are directed at a particular step in the translation process. Claims 3, 4, 13, and 14 do not contribute an additional "inventive concept" and do not need to be analyzed separately under *Alice.*

directPacket says that Claims 7-10 recite a "specific device" to facilitate the methods taught in Claims 1 and 11. Dkt. No. 269 at 9. But these claims merely describe "message interfaces" and "network interfaces" that transceive messages, "protocol signalers" to detect protocols, "protocol conversion tables" that map one protocol to another, and "protocol conversion utilities" that use the tables to convert protocols. Dkt. No. 1-1 at 8:19-56. Such cursory and functional descriptions do not amount to a "specific device." Rather, they recast the steps in Claim 1 into a set of generic, functionally described devices capable of performing each step. *See*

8

1    *Alice*, 573 U.S. at 226 (characterizing a "data processing system" with a "communications

2    controller" as generic rather than "specific hardware").  "Nothing in the claims or their

3    constructions . . . requires anything than conventional computer and network components."  *Two-*

4    *Way Media v. Comcast Cable Commc'ns*, *LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  Without

5    more, these claims lack an "inventive concept" distinct from Claim 1.  *Content Extraction*, 776

6    F.3d at 1349.

7          directPacket's closing point on this score is that Claims 18-23 recite computer

8    programming with specific coding instructions.  Dkt. No. 269 at 9.  To call Claims 18-23

9    "computer programming" drastically overstates what they describe.  For example, Claim 18 recites

10   "a computer program product having a computer readable storage medium with computer logic"

11   comprising "code for receiving . . . detecting . . . converting . . . translating . . . and . . .

12   transmitting."  Dkt. No. 1-1 at 9:54-10:14.  These claims do not set forth an inventive algorithm or

13   specific computer logic.  They abstractly describe code that performs the steps substantially

14   captured by Claim 1.  "Merely reducing an abstract concept to a particular technical platform is

15   not enough to provide the inventive element needed to support a patent."  *Broadcom Corp.*, ___ F.

16   Supp. 3d ___, 2023 WL 3958361, at *5.  Here, too, Claims 18-23 lack the inventive element

17   needed to justify separate treatment from Claim 1.

18   **IV.    THE '588 PATENT IS DIRECTED TO AN ABSTRACT IDEA**

19         Consequently, Claim 1 is an appropriate representative claim for the purposes of Section

20   101.  As stated, Claim 1 recites a method comprising (1) "receiving a multimedia data stream at a

21   communication controller in a first . . .signaling protocol"; (2) "detecting a type of said first

22   protocol"; (3) "converting said first protocol into an intermediate protocol"; (4) "translating said

23   intermediate protocol into a second . . . signaling protocol"; and (5) "transmitting said multimedia

24   data stream in said second protocol to a target communications device."  Dkt. No. 1-1 at 7:26-41.

25         Polycom says that Claim 1, like the '588 patent as a whole, is directed to the abstract idea

26   of translation.  Polycom analogizes Claim 1, whereby a communication controller producing a

27   multimedia stream in one protocol can be understood by a communication controller using a

28   different protocol, to the age-old practice of human language translation.  directPacket has invited

1   similar comparisons in prior representations to this Court.  Dkt. No. 102 at 57:14-17 (directPacket

2   counsel stating at a hearing that "if one network speaks in Spanish and another network speaks in

3   English, you can communicate where the one side only hears Spanish; the one side only hears

4   English").

5         directPacket's main argument in favor of patent eligibility is that Claim 1's recitation of an

6   intermediate protocol makes an analogy to translation inapt.  This is said to be so because humans

7   "do not normally translate between two languages by first translating into a third language."  Dkt.

8   No. 269 at 10.

9         The point is not well taken.  directPacket glides over the commonplace human

10  communication practice of the "relay translation," which is precisely the translation of information

11  through an intermediate language.  *See* Miriam Shlesinger, *Relay Interpreting*, *in* HANDBOOK OF

12  TRANSLATION STUDIES 277 (Yves Gambier & Luc van Doorslaer eds., 2010).  Consider this

13  situation: two individuals want to talk to each other, but one speaks Arabic, the other speaks

14  German, and no Arabic-German translator can be found.  Relay translation solves this problem by

15  using an intermediate language.  The individuals may communicate through someone who can

16  translate from Arabic to English, and someone else who can translate from English to German.

17  Shlesinger, *supra*.  English serves as an intermediate language to bridge the gap between Arabic

18  and German.

19        This is not an exotic or peculiar mode of communication.  Relay translation is common in

20  polyglot communities for use in circumstances ranging from refugee and asylum centers to court

21  proceedings and sign language communication.  *See, e.g.,* Shlesinger, *supra.* (asylum); Fook

22  Khoon Wong, *Courts Interpreting in a Multiracial Society -- The Malaysian Experience*, *in*

23  INTERPRETING: YESTERDAY, TODAY, AND TOMORROW 108-116 (David Bowen & Margaret Bowen

24  eds., 1990) (Malaysian courts); Patrick Boudreault, *Deaf Interpreters*, *in* TOPICS IN SIGNED

25  LANGUAGE INTERPRETING 323-55 (Terry Janzen ed., 2005) (foreign sign language users).  Relay

26  translation is also not a new practice.  In 1837, for example, during the Bulgarian National

27  Revival, Gavril Krustevich translated Benjamin Franklin's *The Way to Wealth* from English into

28  Bulgarian, by way of French as the intermediate language.  Mariyana Tsibranska-Kostova & Irena

Kristeva, *Traces of Hidden Multilingualism in 19th Century Bulgarian Literature and Culture*, *in* HIDDEN MULTILINGUALISM IN 19TH CENTURY EUR. LITERATURE (Jana-Katharina Mende ed., 2023). It may be, as directPacket suggests, that two-language translation is more common than three, but that does not detract from relay translation as a tried-and-true method of human communication. Consequently, the translation of "multimedia streams" using an intermediate protocol is readily analogized to the abstract idea of language translation.

directPacket suggests that Claim 1 entails multiple steps that take it out of the realm of the abstract idea. But multi-step claims can still be directed to an abstract idea. *See, e.g.*, *Broadcom Corp.*, ___ F. Supp. 3d ___, 2023 WL 3958361, at *8. The mentions in Claim 1 of five highly generalized functionalities consisting of "receiving," "detecting," "converting," "translating," and "transmitting," do not make the claim non-abstract. *See Two-Way Media Ltd.*, 874 F.3d at 1337. A pair of interpreters might "receive" a stream of speech from a speaker, "detect" that the speech belongs to one language, "convert" that speech, word-by-word or phrase-by-phrase, from that first language to the intermediate language, "translate" that speech from the intermediate language to the final language, and "transmit" the fully translated speech to the target listener.

directPacket also suggests that the '588 patent teaches "a non-abstract computer-functionality improvement." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018). Although directPacket makes variants of this argument under both steps of *Alice*, *see* Dkt. No. 269 at 8-9, 12, the contention may be addressed at step one of the eligibility inquiry. *See Broadcom*, ___ F. Supp. 3d ___, 2023 WL 3958361, at *7 (analyzing a purported computer functionality improvement under the first step of *Alice*).

A patent that discloses "a specific technique that departs from earlier approaches to solve a specific computer problem" is not directed to an abstract idea under *Alice*. *Ancora Techs., Inc.*, 908 F.3d at 1348. But Claim 1 is neither directed to a specific computer problem, nor does it disclose a specific solution to such a problem. directPacket says that the '588 patent solves a technological problem inherent in "the peculiarities of the Internet -- such as its 'ephemeral nature' or the ability of (and need for) 'near-instantaneous transport between these locations.'" Dkt. No. 269 at 12 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir.

11

2014)). This generic invocation of "the Internet is not sufficient to save the patent." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)). *DDR Holdings* and allied cases are inapposite because the '588 patent addresses problems by no means unique to the Internet. Human speech is often "ephemeral" as well. Conversation, in order to be intelligible, also requires "near-instantaneous" transmission. directPacket has already compared the problems solved by the '588 patent -- when "two endpoints and systems speak different languages, and, thus, cannot understand the messaging and data being transmitted by the other" -- to the problems addressed by translation. Dkt No. 1-1 at 1:61-64; Dkt. No. 102 at 57:14-17.

Even if, solely for discussion, the '588 patent were deemed to be directed to a purely technological problem, it does not "recite a specific enough solution to make the asserted technological improvement concrete." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019). directPacket certainly says that the '588 Patent is directed to "specific methods for achieving a specific function," Dkt. No. 269 at 12, but it provided little in the way of facts to plausibly support the contention. The five steps in Claim 1 are described in "result-oriented generality" and do not disclose any non-abstract improvement upon existing methods of translation. *Koninklijke KPN*, 942 F.3d at 1152. The Federal Circuit said as much in an unpublished decision concluding that a claim directed at transmitting and converting data from one format to another -- "including when data is received from one medium and sent along through another" -- was directed towards the abstract idea of translation, "a fundamental communication practice in both the electronic and pre-electronic worlds." *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (unpublished). The circuit court noted prior decisions finding that ideas of "encoding and decoding . . . data and of converting formats" are abstract. *Id.* at 903 (citing *Two-Way Media Ltd.*, 874 F.3d at 1338; *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017); *EasyWeb Innovations, LLC. v. Twitter, Inc.*, 689 F. App'x 969, 979 (Fed. Cir. 2017)). Here, too, Claim 1 offers an abstract solution to an abstract problem. "Receiving" a data stream in one protocol; detecting, converting, and translating the contents of the stream; and ultimately "transmitting" that stream, is no less

abstract than "encoding and decoding . . . data" and "converting formats." Dkt. No. 1-1 at 7:26-41; *Adaptive Streaming*, 836 F.3d at 903. "Without more, namely without some specific, concrete innovation, the idea remains abstract." *Broadcom Corp.*, ___ F. Supp. 3d ___, 2023 WL 3958361, at *7.

## V.   THE '588 PATENT LACKS AN INVENTIVE CONCEPT

Claim 1 also does not "include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu*. 1 F.4th at 1045.

To start, directPacket says that even if the '588 Patent is directed to the abstract idea of translation, it nevertheless recites an inventive concept through "a 'specific ordered combination[] of elements.'" Dkt. No. 269 at 12 (quoting *Cellspin Soft*, 927 F.3d at 1317-18). But *Cellspin* involved claims where the ordering of steps was unconventional and deviated from well-known and previously practiced techniques. *Cellspin Soft*, 927 F.3d at 1318. In contrast, Claim 1 recites a conventional, intuitive ordering of functions in the translation context. An alternate ordering, where, for instance, information was "converted" before it had ever been "received," would be illogical. directPacket declares Claim 1's ordering to be "innovative" but did not provide any facts to back that up or explain precisely what makes that ordering so special. *See* Dkt. No. 269 at 12. It recycles the suggestion that the introduction of an intermediate protocol is inventive, but as discussed, translators may use intermediate languages to facilitate language translation. Unlike in *Cellspin*, Claim 1 "amount[s] to nothing more than applying the above-identified abstract idea using techniques that are, whether considered individually or as an ordered combination, well-understood, routine, and conventional." *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1377 (Fed. Cir. 2021).

Claim 1 also does not teach a solution unique to a technical medium. It specifies only generic computer hardware, including a "communication controller" and "communication devices," and lacks indicia of "anything more that would suffice to transform their subject matter into an eligible application of the abstract ideal." *Adaptive Streaming*, 836 F. App'x at 904. Claim 1 does not "require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec.*

13

*Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Absent evidence of "specific, unconventional encoding, decoding, . . . or broadcasting techniques," *Adaptive Streaming*, 836 F. App'x at 904, Claim 1 does not state something "significantly more" than the underlying abstract idea to which it is directed. *BSG Tech LLC*, 899 F.3d at 1290.

## CONCLUSION

The first, second, and third claims of the complaint are dismissed with leave to amend. directPacket may file an amended complaint by October 17, 2023. A failure to meet this deadline will result in a dismissal of the claims under Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: September 26, 2023

JAMES DONATO
United States District Judge